IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

QUAVE T WILKINS,

     Petitioner,

v.                               CASE NO. 4:14-cv-154-WS-GRJ

SECRETARY, DEPT. OF CORR.,

     Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner initiated this case by fling a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254, and is proceeding pursuant to an

Amended Petition in which he challenges his jury-trial conviction in Leon

County for two counts of armed robbery with a firearm, for which he is

serving a 20-year sentence.  ECF No. 7.  The Respondent filed a response

to the merits of the Petition together with the relevant portions of the state-

court record.  ECF Nos. 15, 16.  Although afforded an opportunity to do so,

Petitioner did not file a reply.  Upon due consideration of the Petition, the

response, and the state-court record, the undersigned recommends that

the Petition be denied.[1]

_____

[1] Because the Court may resolve the Petition on the basis of the record, the
Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

# I.  State-Court Proceedings

Petitioner was charged with the armed robberies of two victims, Fred Riggs and Jovanni Oropesa, on the same night in December 2007.  The State's theory was that Petitioner acted as a principal together with co-defendants in committing the robberies because Petitioner rode in or drove the getaway vehicle.  Petitioner presented an alibi and misidentification defense premised on the claim that he was not present at either robbery but instead was with his girlfriend.  The evidence adduced at trial may be summarized as follows.

Fred Riggs testified that he was walking with his girlfriend, Ashley Blair, late on the night of the robbery, returning to his home.   The State presented an exhibit that depicted the area.  Riggs testified that when he arrived at his front door he was approached by a man who asked for directions.   Riggs had removed his wallet from his pocket because his key was in it.  As Riggs was giving directions, the man grabbed his wallet and ran.  Riggs chased him and tackled him in a neighbor's yard, striking several blows.  Riggs subdued the man, who was yelling.  A red Honda CRV with two occupants pulled up.  The passenger got out and held a glossy black or chrome semi-automatic pistol in front of the headlight while

he cocked it.  Riggs yelled "gun" and ran away.  The police subsequently

found his wallet in his yard.  Riggs identified the man who took his wallet

later that night when the police took him to the Hickory Hills apartment

complex.  He described the robber as being shorter than himself and

possibly Latino.  Riggs did not identify the Petitioner in court as one of the

individuals he saw that night.  ECF No. 16-1 at 29-43.

Ashley Blair testified that the robber appeared to be a Latino man

who was shorter than Riggs.  After Riggs subdued the man, Blair saw a

red-colored SUV pull up.  A group of neighbors had come out.  A man with

a shiny gun got out of the SUV and cocked the gun; the neighbors

scattered.  Blair could not see the driver clearly, but she initially described

him as having long dreadlocks.  The man with the gun was a tall African-

American .  ECF No. 16-1 at 43-53.

Tallahassee Police Department Officer Jody Farmer testified that he

responded to a robbery call and made contact with the victim, Fred Riggs.

Riggs described the person with the gun as being six foot two.   Farmer

had heard about another robbery in the vicinity.  Farmer issued a BOLO for

a red Honda CRV.  A vehicle was identified at Hickory Hills apartments,

and Farmer helped set up a perimeter for some suspects who were in an

apartment.  Farmer's report includes a description of Petitioner as five feet eight with short hair, and that information was obtained after he was taken into custody.  Farmer identified Petitioner in court as one of the men who was removed from the apartment at Hickory Hills.  ECF No. 16-1 at 53-64.

A neighbor of Riggs, Nicholas Grate, testified that he and his roommate heard screaming, and ran out to see Riggs on top of another man.  Grate called the police, then returned to the scene.  Grate saw a red SUV pull up.  A man got out of the SUV with a gun. The man that Riggs was holding down was a "little guy," possibly Hispanic.  Grate described the man with the gun as tall with an orange shirt.  He described the driver as anywhere from six feet to six-three.  On cross-examination, Grate admitted that when the gun appeared his attention was focused on that rather than what the men looked like or what they were wearing.  ECF No. 16-1 at 64-73.

Riggs' roommate, Joaquin Urrechaga, testified that when the SUV pulled up someone got out of the front and back passenger seats.  The man in the front passenger seat had the gun.  He could not describe the driver.  The man with the gun was about six feet and wearing an orange shirt, and had a "bald fade".  There were at least three people in the SUV.

ECF No. 16-1 at 74-83.

Tallahassee Police Department Officer Lyle Ottley testified that he responded to a call and encountered a robbery victim, Jovanni Oropesa. He later heard over the radio about the Riggs robbery.  Ottley assisted at the Hickory Hills perimeter where four people came out of an apartment: Jarielle Russell, Quave Wilkins, Smith Paget, and Beverly Dorcena. ECF No. 16-1 at 86-92.  TPD Officer Jeff Caplan testified that he transported Fred Riggs to the show-up at the Hickory Hills Apartment. Riggs identified Smith Paget, but could not positively identify Petitioner or Jarielle Russell as suspects.  ECF No. 16-1 at 98-106.

TPD Officer Rob Bascom testified that he located the red Honda CRV less than a mile from both robberies at the Hickory Hills complex. Bascom could see into the vehicle through a window and he observed several items including clothing and a trifold wallet in the center console. Bascom identified photos of the SUV and the items.  The identification and Social Security card in the wallet belonged to Jovanni Oropesa, who showed up on scene and identified the wallet.  Oropesa also identified jackets in the SUV as belonging to the suspects who robbed him.  Bascom found a cell phone in the SUV and using the numbers in the phone was

able to cross reference to an apartment, number A403.  Bascom had

observed a person step out of A403 and then quickly reenter after seeing

the police.  The officers used a loudspeaker to tell the residents of the

apartment to exit with their hands up.  Bascom identified Petitioner as one

of the occupants who left the apartment.  The others were Jarielle Russell,

Beverly Dorsena, and Smith Paget.  ECF No. 16-1 at 106-23.

Smith Paget testified that he pleaded no contest in an open plea to

the armed robberies of Fred Riggs and Jovanni Oropesa.  He had known

Petitioner for a few months prior to the robberies.  At that time, Paget lived

at Hickory Hills Apartment 403.  Petitioner associated with Beverly

Dorsena, whom Paget "assumed" owned the red Honda CRV.  Paget did

not have permission to drive it.  He had seen Petitioner drive it in the past.

Petitioner was staying in the apartment with Paget, as were Jarielle Russell

and another person, Roy Boothe (also identified in Paget's testimony as

"Troy").

During Paget's examination, he became argumentative with the

prosecutor.  When asked who was in the SUV on the night of the

robberies, Paget initially stated "I plea[d] the Fifth."  He then testified that

he was with Jarielle Russell, Roy Boothe, and "some other people."  He

refused several times to answer when asked whether Petitioner was in the

car.   He also refused to say who was left behind at the apartment.   He

said he could not remember telling an investigator that Petitioner was with

him in the SUV.   Paget testified that the people in the car discussed doing

"a lick," meaning a robbery.    When questioned further regarding who was

present, Paget stated "[y]ou want me to testify against Mr. Wilkins.   That is

what you want.   That is not going to happen.   I am not going to testify

against Mr. Wilkins."   He stated that Roy Boothe was the person with the

gun.   After the Riggs robbery, they returned to the apartment.   The people

in the apartment at that point were "Bee", Quave Wilkins, Jarielle Russell,

Roy Booth, and Paget.    Roy Boothe left following an argument.   After the

police arrived, Wilkins and everybody else went into a bedroom with Paget

to talk about the police.   Paget was the first to exit the apartment and told

the police that "we were all involved."

Paget was questioned about a videotaped statement he made.   In

court, he denied that he told the truth in the video.   He testified that he

"somewhat" told the truth in a subsequent sworn statement, but that he

doubted he told the truth about who was in the car.   He testified that he

was under the influence of prescription medication when he made the

statement.  The statement was played out of the jury's presence to refresh

Paget's memory.  In the statement, Paget identified Petitioner as the driver

of the SUV during both robberies.  The other occupants were Jarielle and

Troy.  Paget stated that they all discussed having Paget commit the

robberies.  After hearing argument from counsel on the issue, and over

defense counsel's objection, the court allowed the prosecutor to play for

the jury only the portions of the statement in which Paget identified

Petitioner as the driver of the SUV.  The court concluded that under state

law those parts of the statement were admissible as evidence of

identification.   ECF No. 16-1 at 125-48.

On cross-examination, defense counsel elicited from Paget that he

lied to investigators about who was in the car.  Paget agreed that the truth

was that Petitioner was not in the car with him, but he did not know where

Petitioner was.  Paget testified that Petitioner was in the apartment with

Beverly when he left.  On redirect examination, Paget again stated he lied

to investigators, and was under the influence of medication.  *Id*. at 198-

205.

Investigator April Doubrava identified forensic evidence recovered

from the Honda CRV and the apartment.  When she interviewed Paget the

night of the incident she read him his *Miranda* rights and he agreed to talk to her. He identified Petitioner as one of the people in the car with him. He never appeared to be under the influence of medication or alcohol. ECF No. 16-1 at 205-19.

Other law enforcement officers testified that a 9mm luger was recovered from the Hickory Hills apartment. ECF No. 16-1 at 219-27. Senior crime laboratory analyst Susan Livingston testified that limited DNA results from the Honda's steering wheel excluded Petitioner and Paget as possible donors. Paget's DNA matched a sample obtained from the right rear inside door handle as well as samples obtained from some clothing found in the SUV. Petitioner, Paget, and Russell were identified as contributors to DNA found on two jackets in the SUV, and Petitioner and Russell were identified as contributors on a third jacket. *Id*. at 229-64.

Petitioner's counsel moved for a JOA at the close of the State's case-in-chief. With respect to the Oropesa robbery, counsel argued that the only evidence presented consisted of Oropesa's wallet found in the SUV and Paget's "questionable" testimony. Oropesa had not been located to testify at trial. With respect to the Riggs robbery, counsel argued that the identification testimony was inconsistent. The court denied the motion.

ECF No. 16-1 at 265-71.

During the charge conference, Petitioner's defense counsel declined to request an instruction on "independent act," stating that "our defense is he wasn't there, so I don't know if independent act actually fits."  ECF No. 16-1 at 275.  Petitioner declined to testify on his own behalf, and affirmed on the record that he was satisfied with his lawyer's advice in that regard. *Id.* at 277.  The jury instructions also included one relating to the inference that could be drawn from the possession of stolen property (the Oropesa wallet).  Petitioner's counsel did not request a jury instruction on robbery by sudden snatching.  *Id.* at 277-84.

Beverly Dorcena was called as a defense witness.  She testified that she met Petitioner at Paget's apartment on the day of the robberies and they drove to WalMart in Dorcena's red Honda CRV around four o'clock. They had a fight several days previously and were meeting to make up. They returned to the apartment around five or six; Jarielle and Paget were also present.  They played video games and watched a movie.  Jarielle was walking in and out of the apartment talking on his phone to his girlfriend.  Around eight or nine o'clock, before watching the movie, Dorcena decided to make fried chicken and she took chicken out of the

freezer to thaw.  She used water and the microwave to thaw it in five to ten

minutes, but did not have enough grease to fry all of it.  She asked Paget

to go get some cooking grease.  She loaned him her car around nine

o'clock, and Paget left by himself.  He was gone more than two hours,

although Publix is only five minutes away.  Dorcena had begun preparing

some of the food, including a couple pieces of chicken that they ate.  She

couldn't call Paget because her phone was off and no one else had a

phone.  Paget returned with Troy, and ran straight into the bathroom; he

was dripping wet and had welts all over when he came out.  He did not

bring any frying grease.  Troy was wearing an orange shirt with jeans.  Troy

changed clothes and left the apartment, and Petitioner, Jarielle, and Paget

went into the bedroom.  Dorcena described Petitioner as around five feet

six with short hair, and she had never known him to have dreadlocks.

Dorcena could not remember how much time passed between the police

arriving and exiting the apartment.  ECF No. 16-1 at 285-320.

The State called Investigator Doubrava as a rebuttal witness.  She

testified that when they entered the apartment there was a full plate of

freshly fried chicken on the counter that did not appear to have been eaten.

They found no evidence that any chicken had been eaten, and nothing in

the trash.    ECF No. 16-1 at 320-26.

In closing argument, defense counsel highlighted discrepancies in the evidence.  He pointed out that no witnesses testified as to how many people were in the Honda during the Oropesa robbery, and only one witness said there were four people in the car during the Riggs robbery. Among other arguments, counsel pointed out that the DNA evidence did not conclusively place Petitioner in the Honda.   Counsel pointed out that there was no independent identification of Petitioner, other than Paget, and that Paget admitted in his testimony that he lied when he identified Petitioner.  Counsel also noted that Dorcena's testimony supported Petitioner's alibi.  ECF No. 16-1 at 350-60.

The jury found Petitioner guilty of armed robbery on both counts. ECF No. 16-2 at 8-9.  Petitioner appealed, arguing that the trial court erred in admitting Paget's hearsay statements, the trial court erred in denying the motion for judgment of acquittal, and the trial court abused its discretion by instructing the jury that possession of recently stolen property may justify a conviction of robbery.  ECF No. 16-2 at 72.  The First DCA affirmed *per curiam* without written opinion.  ECF No. 16-2 at 235.

Petitioner sought postconviction relief by way of a Rule 3.850 motion

alleging ineffective assistance of counsel.  ECF No. 16-2 at 244-49.

Specifically, Petitioner alleged that counsel was ineffective for failing to

pursue an "independent act" defense; for failing to sever the two counts; for

failing to request a jury instruction for robbery by sudden snatching without

a firearm; and cumulative error.  *Id*.  Following an evidentiary hearing, the

trial court denied relief.  ECF No. 16-2 at 251-305.  The First DCA affirmed,

*per curiam*, without written opinion.  ECF No. 16-3 at 58.

The instant federal habeas corpus petition, which Respondent

concedes is timely, followed.  Petitioner asserts as grounds for relief the

three claims of trial-court error raised in his direct appeal, and the four

ineffective-assistance claims raised in his Rule 3.850 motion.  ECF No. 7.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id.* at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*,

513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

For claims that are properly exhausted, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes further limitations on the scope of this Court's review.   Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___,  2013 WL 5904117, *4 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."   *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.

---

[2] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

AEDPA requires 'a state prisoner [to] show that the state court's ruling on

the claim being presented in federal court was so lacking in justification

that there was an error . . . beyond any possibility for fairminded

disagreement.'"   *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131

S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it

is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct.

at 786).  "We will not lightly conclude that a State's criminal justice system

has experienced the 'extreme malfunction' for which federal habeas relief

is the remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV.  Discussion

### A.  Counsel's Failure to Pursue "Independent Act" Defense

Petitioner argues that after the trial court admitted evidence that

placed Petitioner at the scene of the crime (over counsel's objection) his

counsel should have "shifted gears" and pursed the defense of

"independent act" – that the robbery and use of a firearm was outside the

common design of the crime, and therefore that Petitioner should not be

held liable for the offense.  ECF No. 7.

Petitioner raised this claim in his Rule 3.850 motion.  At the

evidentiary hearing, at which Petitioner was represented by counsel,

Petitioner's trial counsel, Gregory Cummings, testified that he was familiar

with the defense.  Although he could not recall discussing it as a potential defense with Petitioner, he would have pointed out that Petitioner's adamant defense was that he was not at the scene of the crime.  Although Mr. Cummings was aware that both defenses could be presented in the alternative, he felt it was important to maintain credibility with the jury.  Mr. Cummings had practiced law since 1980, was certified to handle capital cases, and had handled numerous armed robbery cases.  Petitioner told Mr. Cummings that he was with his girlfriend when the offenses were committed, and for the defense to be available it would have required placing Petitioner at the scene of the crimes.  ECF No. 16-2 at 265-86.

After considering the testimony at the hearing and applying *Strickland*, the state court rejected this claim.  The state court found that counsel made a reasonable strategic decision to preserve credibility with the jury by not making alternative factual arguments to the jury, in light of Petitioner's claim that he was with his girlfriend during the robberies.  ECF No. 16-2 at 301.

A review of the trial record, as summarized above, amply supports the trial court's conclusion.  Faced with the equivocal evidence of identification and the alibi offered by Dorcena, it was not unreasonable strategy to adhere to the misidentification/alibi defense even after portions

of Paget's videotaped statement on identification were admitted,

particularly when Paget himself disavowed the earlier statements at trial.

The state court correctly afforded deference to counsel's strategic

decision, and Petitioner has failed to show that the state court's rejection of

this ineffective-assistance claim was "so lacking in justification that there

was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,*

134 U.S. at 15.

## B.  Failure to Sever the Offenses

Petitioner contends that his counsel should have moved to sever the

charge in Count 2 involving victim Jovanni Oropesa after it became clear

that Oropesa could not be located to testify at trial.  Petitioner contends

that by failing to sever the counts, his right to confront his accuser was

compromised.  ECF No. 7.

At the evidentiary hearing, Mr. Cummings testified that he did not

move to sever the charges after learning that Oropesa could not be located

because "[i]f he wasn't testifying his identification of [Petitioner] wasn't

getting in."  ECF No. 16-2 at 264.  At trial, an officer testified that Oropesa

identified his wallet and articles of clothing worn by the suspects that were

found in the Honda .  However, his statements during the show-up of the

suspects were not admitted into evidence because the prosecutor

recognized that the statements would present a confrontation issue.  ECF No. 16-1 at 101-02.

At the conclusion of the Rule 3.850 evidentiary hearing, the trial court determined that Mr. Cummings' decision not to move to sever the charges was a reasonable strategic decision.  The court observed that "[i]t's certainly not unreasonable to believe the state having the victim present for the next trial would improve the State's case."  Although some identification statements by Oropesa were admitted anyway (regarding the stolen wallet and articles of clothing), there was no question that "the State would much prefer to have their witness present and testifying before the jury.  So in terms of a strategic decision I don't think there's any question that it was a reasonable strategic decision.  ECF No. 16-2 at 301-02.

Again, the record supports the trial court's conclusion.   Although the record of the evidentiary hearing is somewhat confused regarding the admission of statements by Oropesa, it is clear from the trial record that the *only* statements admitted were his identification of his wallet and the articles of the clothing, and not any out-of-court identification of Petitioner. It was reasonable for counsel to make a strategic decision to try the Oropesa case with the Riggs case since to do otherwise might expose Petitioner to a later in-court identification by Oropesa.   The state court

correctly afforded deference to counsel's strategic decision, and Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### C.  Jury Instruction for Robbery by Sudden Snatching

Petitioner contends that counsel was ineffective for failing to request a jury instruction for the offense of robbery by sudden snatching without a firearm.  ECF No. 7.

At the conclusion of the evidentiary hearing, the trial court rejected this claim for the same reason it rejected Petitioner's independent-act claim.  In view of Petitioner's adherence to the claim that he was not present at the robberies, it was reasonable not to request a jury instruction that was premised on an alternative factual scenario.  ECF No. 16-2 at 303-04.  For the same reasons discussed above, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### D.  Cumulative Error

Petitioner asserts that he is entitled to federal habeas corpus relief on the basis of counsel's cumulative errors.  ECF No. 7. This is not a

cognizable federal claim. "'[T]he Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564-65 (11th Cir. 2009)(*per curiam*) (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief."). Accordingly, Petitioner is not entitled to relief on this claim.

### E. Trial Court Error Regarding Hearsay Statements of Paget

Petitioner contends that the trial court erred by allowing the State to play portions of Paget's videotaped statement for the jury. ECF No. 7. As explained above, the trial court admitted the statements after concluding that they were admissible as identification evidence under state law.

Respondent contends that this claim is procedurally defaulted and foreclosed from federal habeas review because it was not raised as a federal claim in Petitioner's direct appeal. Petitioner's appellate arguments focused exclusively on the trial court's interpretation of the Florida

Evidence Code and state case law.  ECF No. 15.  The Court agrees.

However, even if Petitioner failed to properly exhaust this as a federal

claim it is clear that it fails on the merits and a habeas petition can be

denied on the merits notwithstanding the Petitioner's failure to properly

exhaust a claim.  28 U.S.C. § 2254(b)(2).

A state trial court's evidentiary rulings do not provide a basis for

federal habeas relief absent a showing that the ruling affected the

fundamental fairness of the trial.  *See Sims v. Singletary*, 155 F.3d 1297,

1312 (11th Cir. 1998).   A Petitioner must show that the ruling was more

than merely erroneous; it must have had "'[a] substantial and injurious

effect or influence in determining the jury's verdict.'" *Id*.  (quoting *Brecht v.

Abrahamson*, 507 U.S. 619, 623 (1993)).

Petitioner has failed to show that admission of the identification

portions of Paget's prior statement under state law was fundamentally

unfair.  The trial record reflects that Petitioner's counsel thoroughly

questioned Paget regarding the prior identification statements, and elicited

testimony from Paget in which Paget disavowed his prior identification of

Petitioner and stated that Petitioner was not present during the robberies.

Thus, Petitioner was afforded a full and fair opportunity at trial to contest

the reliability of the prior statements.  The prior statements, and Paget's

contrary testimony at trial, created an issue of credibility for the jury to resolve, but on this record did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See id*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### F.  Sufficiency of the Evidence

Petitioner asserts that the trial court erred by denying his motion for a JOA on both counts.  ECF No. 7.

When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As the Eleventh Circuit has explained:

> Faced with a record of historical facts that supports conflicting inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, and we defer to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.1987). The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. *Id*.

*Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004); *see Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no

power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").  "In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crimes as defined by state law."  *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations omitted).

In this case, the essential elements of armed robbery with a firearm were explained to the jury: (1) the defendant took property from the person or custody of the victim; (2) force or violence, assault or putting in fear was used in the taking; (3) the property taken was of some value; and (4) the taking was with the intent to permanently or temporarily deprive the victim of his right to the property or any benefit from it; and (5) the defendant carried a firearm in the course of committing the robbery.  The court also instructed the jury on lesser-included offenses and that if the defendant helped another person commit the crime then he is a principal and must be treated as if he had done all the things the other person did.  ECF No. 16-1 at 333-35.

Petitioner argues that Paget's testimony was insufficient to create a fact issue for the jury and that his prior inconsistent statements were insufficient evidence.  As explained above, Paget's trial testimony and prior

statements plainly created fact and credibility issues for the jury to decide.

Further, the State presented other evidence linking Petitioner to the crime,

including DNA evidence on articles of clothing found in the Honda, and the

presence of a victim's wallet in his girlfriend's Honda.  Viewing the

evidence in a light most favorable to the prosecution, a rational trier of fact

could have found the essential elements beyond a reasonable doubt.

Petitioner is not entitled to federal habeas relief on this claim.

## G.  *Jury Instruction on Stolen Property*

Petitioner contends that the trial court abused its discretion by

instructing the jury that possession of recently stolen property "may justify

a conviction of robbery."  ECF No. 7.  As explained above, the state court

determined that the instruction was appropriate under state law.

As with Petitioner's hearsay claim, this claim was not exhausted as a

federal claim in state court and therefore is procedurally defaulted and

foreclosed from federal review.  Further, in this Court Petitioner has not

asserted a federal constitutional claim in connection with the jury

instruction.  Petitioner claims only that the jury instruction amounted to an

abuse of the trial court's discretion.  The Eleventh Circuit has held that a

claim challenging a jury instruction only on state-law grounds is not

cognizable on federal habeas corpus review.  *Joseph v. Sec'y, Dept. of*

*Corr.*, 567 Fed. Appx. 893, * 894, 2014 WL 2259940 (11th Cir. 2014) ("'the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for federal habeas relief.'") (quoting *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991)).   Accordingly, this claim presents no cognizable basis for habeas corpus relief.

### V.   Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   Thus, if there is an objection to this recommendation by either

party, that party may bring this argument to the attention of the district

judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  ECF

No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 16th day of February 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations
must be filed within fourteen (14) days after being served a copy
thereof.  <u>Any different deadline that may appear on the electronic
docket is for the court's internal use only, and does not control.</u>  A
copy of objections shall be served upon all other parties.  If a party
fails to object to the magistrate judge's findings or recommendations
as to any particular claim or issue contained in a report and
recommendation, that party waives the right to challenge on appeal
the district court's order based on the unobjected-to factual and legal
conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.